IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **TIMOTHY BURKE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:24CV00027 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **N.M. ADAMS, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Jonathan E. Halperin and Helen T. Vu,* HALPERIN LAW CENTER, LLC, *Glen Allen, Virginia, for Plaintiff; Andrew R. Page,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for Defendants N.M. Adams, M.L. Reed, S.L. McDaniels, J.E. Lancaster, J.L. McNeil, D.R. Nelson, J.R. Tabor, Lt. Viar, John Shoda, Francis Taylor-Perkins, Reagan Coe, Counselor Jarrell, and Rodney Younce.*

The plaintiff is an inmate at a state correctional facility who alleges that the failure of correctional staff to protect him from retaliation by a fellow inmate led to his assault and hospitalization. The defendants, correctional officers at the prison, move to dismiss his First Amended Complaint under 42 U.S.C. § 1983 on the ground that he does not allege that they personally engaged in conduct amounting to a constitutional violation.[1] For the reasons below, I must deny the Motion to Dismiss.

---

[1] The Motion to Dismiss was filed on behalf of all defendants except the defendant identified in the First Amended Complaint as "Lieutenant Ramey." The docket shows that summonses for this defendant were returned unexecuted. *See* ECF Nos. 27, 34. Since it appears that this defendant has not been timely served, Fed. R. Civ. P. 4(m), the plaintiff is given notice that this defendant will be dismissed without prejudice unless service is made within 28 days of this date.

## I. BACKGROUND.

At this point in the case, I must accept as true the well-pleaded facts set forth in the Amended Complaint.

Timothy Burke was, at the relevant times, an inmate at the Bland Correctional Center (BCC), a state prison, in Bland County, Virginia. Sometime before July 2022, Burke participated in an inmate program with a fellow inmate referred to only as Inmate Doe. Inmate Doe was a high-ranking member of a gang at BCC. Following an "incident" during the program involving Burke and Inmate Doe, Burke reported Inmate Doe to the coordinators of the program. He was then called into the office of defendant M.L. Reed, the chief of housing and programs at BCC, where he also spoke with Reagan Coe, a casework counselor. Am. Compl. 7, ECF No. 38. During their conversation, Burke discussed the incident and said that he was afraid of being retaliated against for reporting Inmate Doe. Reed told Burke she would take care of it and told him not to worry about retaliation.

Defendants Coe and Francis Taylor-Perkins, a building unit manager at BCC, investigated Burke's allegations. They also spoke with Burke multiple times about his fear of retaliation. Inmate Doe ultimately learned that Burke was the person who had reported him and began to threaten Burke with retaliation. Burke was also threatened by Inmate Doe's fellow gang members.

At BCC, inmates were permitted to move freely between housing units and buildings without prior authorization or supervision by the correctional officers. As a result, Burke was especially concerned that Inmate Doe would follow through on his threats. Ultimately, Burke personally reported Inmate Doe's threats and the effect that BCC's housing access policy had on his safety to all but three of the defendants. But none of them documented his concerns or took action to prevent Inmate Doe from following through on his threats.

On July 1, 2022, "an unidentified inmate entered and ransacked Mr. Burke's cell and destroyed his personal property." Am. Compl. 9, ECF No. 38. Burke attributes this event to a member of Inmate Doe's gang acting on Inmate Doe's authority. This unidentified inmate did not live in Burke's housing unit and was only able to access Burke's cell because of BCC's housing access policy.

After July 1, Burke spoke to defendants Reed, Taylor-Perkins, and Coe about his fear of further retaliation. He also spoke to defendants N.M. Adams, a grievance coordinator; S.L. McDaniels, an intelligence officer; J.R. Tabor, a property officer; Viar, an institutional investigator; John Shoda, a building unit manager; and Jarrell, a counselor. He also submitted grievances to Adams, which she did not acknowledge or address. And he submitted written requests to defendant Ramey, a shift commander at BCC, but Ramey never responded. Burke's mother and other acquaintances also contacted the defendants to express their own concerns about his

safety. Despite these efforts, no actions were taken to protect Burke, change the housing unit access policy, or otherwise reduce the risk that Inmate Doe would escalate his retaliation. Burke's conversations and his written reports were never documented by the defendants.

On July 13, 2022, Burke spoke to Warden Younce in the foyer of 1 Building, where he was living, and again raised his fears of retaliation from Inmate Doe and his fellow gang members. No action was taken, and at around 12:00 p.m. that day, Burke was attacked in his cell by several other inmates. The attack resulted in Burke's hospitalization for four days, and he had surgery to remove his spleen and repair his liver. Defendants D.R. Nelson, a shift commander; J.L. McNeil, a building supervisor in charge of Burke's housing unit; and J.E. Lancaster, the only officer assigned to patrol Burke's housing unit, were on duty at the time of the attack.

An investigation by BCC officials determined that the attack was gang related. The assailants were associated with Inmate Doe's gang and were motivated to retaliate for Burke's reporting of Inmate Doe to the inmate program coordinators. None of the attackers had been assigned to Burke's housing unit, but they were able to access his cell at least in part because of BCC's policy permitting unrestricted access to adjoining housing units.

## II. STANDARD OF REVIEW.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim, but it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The reviewing court must accept all factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a claim under § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION.

In his First Amended Complaint, the plaintiff asserts one cause of action against all the defendants: deliberate indifference to his safety in violation of the Eighth Amendment's prohibition on cruel and unusual punishment under § 1983.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). However, not "every injury suffered by one prisoner at the hands of another [. . .] translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A violation of the Eighth Amendment has two requirements: "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the prison official must have a "sufficiently culpable state of mind," which is "one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citation omitted). Deliberate indifference is "'something more than mere negligence,' but less than acts or omissions undertaken for the very purpose of causing harm, or with knowledge that harm will result." *Price v. Sasser*, 65 F.3d 342, 345 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 835). A prison official is liable when he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "also draws the inference." *Farmer*, 511 U.S. at 837.

Taking the facts alleged as true, Burke has clearly met the first prong. The attack left him in the hospital for four days and required surgery in to repair his liver and remove his spleen. He also alleges that an investigation afterwards concluded

the attackers were associated with Inmate Doe's gang, and that the attack was in retaliation for Burke's reporting of Inmate Doe to the inmate program coordinators. Because Burke suffered serious harm, the next step is to evaluate whether Burke alleges facts showing that all of the defendants were deliberately indifferent to the risk of harm facing Burke as a result of his reporting Inmate Doe.

Knowledge of a substantial risk of serious harm facing an inmate may be shown by circumstantial evidence. *Koon v. North Carolina*, 50 F.4th 398, 407 (4th Cir. 2022). A risk being obvious is enough, but the relevant question is "whether it was so obvious [prison officials] *must* have known, instead of whether it was so obvious they *should* have known." *Id.* Relevant inquiries include whether the inmate's rights violations were "longstanding, pervasive, well-documented, or expressly noted by the prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Id.* (quoting *Farmer*, 511 U.S. at 842).

Here, Burke alleges that BCC had a "longstanding," facility-wide policy permitting inmates to move freely between housing units and buildings, unsupervised and unrestricted. Am. Compl. 7, ECF No. 38. He also alleges that defendant McDaniels, an intelligence officer, acknowledged "that inmates were being allowed to move freely between housing units and buildings." *Id.* at 11. Furthermore, he alleges that he communicated his concerns about Inmate Doe's

-7-

threats to all of the defendants except the three officers who were on duty the day of his attack. But none of the defendants documented his conversations with them or the written reports he submitted. Nor did they take any action to prevent the inmates from following through on their threats, or to change the housing access policy. This is despite the fact that Burke reported to defendant Ramey that an inmate had entered his cell and destroyed his personal belongings on July 1, and Burke expressed concern that he would face more retaliation in the future.

And for defendants Nelson, McNeil, and Lancaster, Burke alleges that they were still aware of the immediate risk of harm Burke faced from Inmate Doe because of internal communications and shift reports. But Nelson and McNeil chose to assign only Lancaster to patrol 1 Building, and Lancaster did not keep the entryways of 1 Building secure. An investigation showed that the assailants were not assigned to Burke's housing unit and were associated with Inmate Doe's gang. At this point in the case, Burke has sufficiently alleged facts showing that all of the defendants were deliberately indifferent to the substantial risk of serious harm that Burke faced.

In their motion, the defendants argue that the Amended Complaint does not create more than a "sheer possibility" that they were involved in a constitutional violation because Burke does not reference "any specific conduct or individualized knowledge of any of these defendants that would be sufficient to establish the alleged constitutional deprivations." Mem. Supp. Mot. Dismiss 5, ECF No. 40; *Iqbal*, 556

U.S. at 678.  But Burke alleges that he personally made all but three defendants — Nelson, McNeil, and Lancaster — aware of his concerns about Inmate Doe and the added danger that BCC's housing policy posed through direct conversations and written requests and grievances.  And he alleges that shift reports made the remaining three aware, as well.

Furthermore, the plaintiff cites *Cox v. Quinn* to argue that the defendants must have known about the risk that Burke faced.  828 F.3d 227 (4th Cir. 2016).  An inmate, Cox, had warned multiple prison officials that he was afraid three other inmates would hurt him because he had reported them for misbehavior.  He asked the correctional officers not to speak to the three inmates for fear of further retaliation and requested that either he or they be moved out of their shared housing pod.  Officers instead chose to speak with the three inmates about Cox's concerns and did nothing else.  A fourth inmate, who was affiliated with the three, ended up attacking Cox in his cell.  *Cox*, 828 F.3d at 233–34.

The Fourth Circuit found that material issues of fact precluded summary judgment for the officers on Cox's deliberate indifference claim.  Instead of moving Cox or the three inmates out of the pod, "the officers opted to do the very thing Cox warned them would lead to disaster: They directly confronted the inmates who were threatening Cox."  *Id.* at 237.  This was "not only unreasonable, but so patently inadequate as to justify an inference that the official[s] actually recognized that

[their] response to the risk was inappropriate under the circumstances." *Id.* (internal quotation marks and citation omitted).

The facts in *Cox* are similar to those alleged here. The fact that Burke repeatedly warned almost all of the defendants either verbally or in writing in the weeks leading up to the attack is sufficient to demonstrate that they knew about the substantial risk of harm facing Burke but took no action to intervene. While the attackers were not in Burke's housing unit, unlike the inmates who shared a pod in *Cox*, BCC's policy permitting unrestricted access to different housing units supports that the defendants must have known Burke faced a substantial risk of serious harm.

The defendants also argue that Burke alleged only that he notified them of "general concerns regarding his safety because of the actions of Inmate Doe," and "[a]t no point . . . allege[d] Inmate Doe did anything at all." Mem. Supp. Mot. Dismiss 7, ECF No. 40. But prison officials may not "escape liability" because they "did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843. "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id.* The defendants' arguments over Burke's lack of specificity in his allegations are not, at this stage, sufficient to grant a motion to dismiss.

Because Burke has sufficiently alleged that the defendants were deliberately indifferent to a substantial risk of serious harm, I must deny the Motion to Dismiss.

IV. CONCLUSION.

For the foregoing reasons, the Defendants' Motion to Dismiss, ECF No. 39, is DENIED.

It is so **ORDERED**.

ENTER: June 2, 2025

/s/ JAMES P. JONES
Senior United States District Judge